# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
**BRENDAN A. HURSON**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
**BALTIMORE, MARYLAND 21201**
**(410) 962-0782**
MDD_BAHChambers@mdd.uscourts.gov

September 5, 2023

LETTER TO ALL COUNSEL OF RECORD

Re:   *Kenneth C. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
      Civil No. 22-2936-BAH

Dear Counsel:

On November 14, 2022, Plaintiff Kenneth C. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8), the parties' dispositive filings (ECFs 11 and 13), and Plaintiff's reply (ECF 18). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the SSA's decision. This letter explains why.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on August 2, 2019, alleging a disability onset of March 1, 2018. Tr. 191–94. Plaintiff's claim was denied initially and on reconsideration. Tr. 119–28, 130–35. On April 4, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 40–53. Following the hearing, on April 28, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[1] during the relevant time frame. Tr. 18–39. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.   THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability;

_____
[1] 42 U.S.C. §§ 301 et seq.

*Kenneth C. v. Kijakazi*
Civil No. 22-2936-BAH
September 5, 2023
Page 2

(2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of March 1, 2018 through his date last insured of December 31, 2020." Tr. 23. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "cardiomyopathy, remote history of seizure disorder, traumatic brain injury, and chronic heart failure with pacemaker placement." Tr. 24. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "depression and anxiety" as well as a non-severe "back impairment." *Id.* At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" through the date he was last insured. Tr. 25. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ramps and stairs, never climb ladders, ropes, and scaffolds, occasionally balance, stoop, kneel, crouch, and never crawl; can never have exposure to unprotected heights or moving mechanical parts, can have occasional exposure to extreme wetness, and occasional exposure to chemicals and irritants such as fumes, odors, dusts, gases, and poorly ventilated areas. He can perform no jobs that require exposure to vibration.

Tr. 28. The ALJ determined that Plaintiff was unable to perform past relevant work as an automobile mechanic (DOT[2] #620.261-010) through the date he was last insured. Tr. 33. However, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Tr. 33–34. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 34.

### III.   LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The

---

[2] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Kenneth C. v. Kijakazi*
Civil No. 22-2936-BAH
September 5, 2023
Page 3

findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

IV.   **ANALYSIS**

On appeal, Plaintiff argues that the RFC is unsupported by substantial evidence "because the ALJ failed to consider Plaintiff's nonsevere mental health impairments" of depression and anxiety "in combination with his physical impairments."  ECF 11, at 11.  More specifically, Plaintiff avers that the ALJ committed "material" and "harmful" error because they "never discussed or considered Plaintiff's mental impairments beyond step-two of the sequential evaluation . . . despite the requirement that the ALJ conduct 'a more detailed assessment' when determining Plaintiff's [RFC] by considering limitations and restrictions imposed by all of Plaintiff's impairments, including those that are not severe." *Id.* at 13–14 (citing Social Security Ruling "SSR" 96-8p, 1996 WL 374184 (July 2, 1996)).  Plaintiff also argues that the ALJ erred by failing to include an RFC provision "related to Plaintiff's stress"—a limitation deemed necessary by Plaintiff's cardiologist. *Id.* at 15–16.  Defendant counters that substantial evidence supports the ALJ's decision because the ALJ properly evaluated Plaintiff's mild mental functional limitations, as well as his physical impairments and ability to handle stress.  ECF 13, at 5–12.

SSR 96-8p requires an ALJ to "assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184, at *4.  The ruling also provides that an ALJ "must remember that the limitations identified in [paragraphs B and C] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.*  The ruling then differentiates the psychiatric review technique from the RFC assessment by explaining that "the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" paragraphs B and C. *Id.*; *see also Fears v. Berryhill*, No. 16-055, 2018 WL 1547365, at *2 (W.D. Va. Mar. 29, 2018) (explaining that the "various functions" to be itemized under SSR 96-8p "all relate to the claimant's ability to work. They include the abilities to: 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'") (citations omitted).  SSR 96-8p further provides, in relevant part, that

> [i]n assessing RFC, the [ALJ] must consider limitations and restrictions imposed
> by all of an individual's impairments, even those that are not "severe."  While a
> "not severe" impairment(s) standing alone may not significantly limit an

*Kenneth C. v. Kijakazi*
Civil No. 22-2936-BAH
September 5, 2023
Page 4

individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5.

As an initial matter, Plaintiff's contention that the ALJ in this case failed to comply with SSR 96-8p is unpersuasive.  Here, at step two, the ALJ determined that Plaintiff's depression and anxiety were non-severe because, when "considered singly and in combination," the impairments "did not cause more than minimal limitation in" Plaintiff's "ability to perform basic mental work activities[.]"[3]  Tr. 24.  The ALJ further determined that Plaintiff has a "mild" limitation in each of the 'paragraph B' categories of mental functioning,[4] which include understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself.[5]  Tr. 24–25.  The ALJ also correctly noted at step two that their assessments of Plaintiff's 'paragraph B' limitations "are not [an RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment."  Tr. 25.

The ALJ subsequently assessed Plaintiff's RFC.  *See* Tr. 28–33.  Plaintiff avers that in doing so, the ALJ "never discussed or considered Plaintiff's mental impairments[.]"  ECF 11, at 13.  This is incorrect.  Indeed, the ALJ was "persuaded by the State agency initial level determination that [Plaintiff's] mental impairments are non-severe."  Tr. 31.  The ALJ found the determination persuasive due, in part, to Plaintiff's "reported activities of daily living and lack of mental health treatment during the alleged disability period."  *Id.*  Additionally, the ALJ found that:

the current record does not support the inclusion of [an RFC limitation for

---

[3] Plaintiff does not argue that the ALJ erred by finding these impairments to be non-severe.

[4] Plaintiff does not argue that this determination constituted error.

[5] Plaintiff suggests that the ALJ's step-two determination that Plaintiff suffers from a "mild" limitation in adapting and managing himself "proves that" the ALJ "was well aware of the interrelation between Plaintiff's mental health issues and his physical issues" because the ALJ noted that stress "exacerbated [Plaintiff's] physical conditions."  ECF 11, at 14.  Plaintiff overreads the ALJ's analysis.  The ALJ did not "find" that stress exacerbated Plaintiff's impairments; he merely noted that Plaintiff testified to this fact.  *See* Tr. 25 ("He indicated he does not handle stress well and it exacerbates his physical condition.").  The ALJ also determined that Plaintiff has only a "mild" limitation in this area because he can perform household chores and activities of daily living independently.  *See id.*

*Kenneth C. v. Kijakazi*
Civil No. 22-2936-BAH
September 5, 2023
Page 5

> Plaintiff's] mental impairments such as a limitation to simple, routine work with occasional changes in the work setting.  The claimant has had no mental health treatment during the alleged disability period and is independent in all aspects of his daily living; the record does not support a limitation to moderate limitations in understanding, remembering, or applying information or adapting/managing himself.

Tr. 32.  This analysis, while brief, makes clear that the ALJ did not determine that Plaintiff's mild 'paragraph B' limitations, or the non-severe mental impairments corresponding to them, warranted RFC restrictions.  This determination coheres with the ALJ's observation at step two that Plaintiff "denied recent mental health symptoms" in January 2018, that Plaintiff took his psychotropic medications and CBD "consistently," and that Plaintiff experienced "no change in this status in April 2019, August 2020, and January 2021."  Tr. 24.  The analysis also comports with SSR 96-8p because it itemizes 'paragraph B' functions relevant to Plaintiff's ability to work in light of Plaintiff's 'paragraph B' limitations.  *See* Tr. 32 (noting, specifically, that a limitation "to simple, routine work with occasional changes in the work setting" was not warranted).  Such an analysis provides the requisite "logical bridge" between the evidence and the ALJ's conclusion which is needed to trace the ALJ's reasoning.  *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018).[6]

Plaintiff also avers that the ALJ should have included a "restriction related to Plaintiff's stress" within the RFC, and that their failure to do so was harmful.  ECF 11, at 15–16.  I disagree. "A finding of a mild limitation means that functioning in a given area independently, appropriately, effectively, and on a sustained basis is only slightly limited." *Carter v. Kijakazi*, No. 5:22CV159-GCM, 2023 WL 5014781, at *3 (W.D.N.C. Aug. 7, 2023) (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00F2b).  Accordingly, when a claimant possesses only a "mild" limitation in an area of mental functioning, as Plaintiff does here with regard to adapting and managing himself, the ALJ is not required to craft an RFC provision to address the limitation.  *See, e.g.*, *Sprague v. Colvin*, No. 8:13-CV-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) (rejecting an

---

[6] The ALJ's discussion here, though brief, stands in contrast to cases where remand is required because an ALJ failed to even mention at steps four and five a mental health impairment recognized and discussed at step two. *See Michelle A. v. Kijakazi*, No. 21-1200-BAH, 2022 WL 2918143, at *4 (D. Md. July 25, 2022) ("As Plaintiff correctly points out, the rest of the ALJ's RFC analysis lacks *any* analysis of Plaintiff's mental impairments, let alone a function-by-function analysis that would illuminate whether Plaintiff is capable of performing any kind of work on a consistent and competitive basis.") (emphasis in original); *Freda T. v. Saul*, No. 21-1630-BAH, 2022 WL 1122831, at *3 (D. Md. Apr. 14, 2022) ("Indeed, the remainder of the ALJ's opinion addressing Plaintiff's RFC makes almost no reference to Plaintiff's mental health until later claiming that the ALJ compared Plaintiff's RFC 'with the physical and mental demands [of Plaintiff's past relevant work].'") (alteration in original).

*Kenneth C. v. Kijakazi*
Civil No. 22-2936-BAH
September 5, 2023
Page 6

argument that an ALJ was required to include mental RFC limitations because she found that the plaintiff had mild limitations in social functioning and concentration, persistence, and pace, and noting that "in many, if not most cases, there will be no functional limitations from a nonsevere impairment").  Further, as discussed above, the ALJ adequately explained why Plaintiff's non-severe mental impairments did not warrant any corresponding RFC limitations.  Accordingly, I find no error in the ALJ's decision not to incorporate Plaintiff's non-severe mental impairments or 'paragraph B' limitations into the RFC.

The fact that Plaintiff's treating cardiologist, Dr. Lili Barouch, opined that Plaintiff's mental impairments warranted certain "work-related restrictions" does not change the Court's analysis.  ECF 11, at 14–15 (noting that Dr. Barouch opined that "increased stress may lead to worsening of patient's cardiac health" and that "Plaintiff was incapable of even 'low stress' work").  The ALJ explicitly rejected Dr. Barouch's opined restrictions by noting that her medical source statement was "not overly" persuasive.[7]  Tr. 32 (noting that Dr. Barouch's "opinion is overly restrictive and not entirely consistent with the record").  Plaintiff avers that the ALJ failed to consider "the interaction between" Plaintiff's stress levels and his physical conditions, as opined by Dr. Barouch, *see* ECF 11, at 15, but the ALJ's negative evaluation of Dr. Barouch's statement makes clear that the ALJ considered—and rejected—the notion of any such interaction.  Moreover, the ALJ explicitly noted that Plaintiff was described as "doing generally okay from a cardiac standpoint" at a June 2019 cardiology visit with Dr. Barouch.  Tr. 29.  Plaintiff does not argue that the ALJ failed to consider any relevant evidence put forth by Dr. Barouch, and I am unable to reweigh the evidence upon which the ALJ did rely.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").  Accordingly, Plaintiff's argument fails.

In sum, the ALJ adequately evaluated Plaintiff's impairments and complied with SSR 96-8p.  Remand is therefore unwarranted.

## V.   **CONCLUSION**

For the reasons set forth herein the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g), The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

---

[7] Plaintiff suggests in his reply brief that "[t]he ALJ's dismissal of" Dr. Barouch's opinion was "improper."  ECF 18, at 5.  Because this argument appears for the first time in Plaintiff's reply brief, the Court is not obligated to address it.  *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in [his] opening brief or by failing to develop [his] argument—even if [his] brief takes a passing shot at the issue.") (internal quotation marks omitted).

*Kenneth C. v. Kijakazi*
Civil No. 22-2936-BAH
September 5, 2023
Page 7

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge